1
2
3
4
5
6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

7

8    UNITED STATES OF AMERICA,

9        Plaintiff,

10        v.

11    HUGO COLLAZOS-MUNOZ,

12        Defendant.

NOS. CR-00-054-RHW
CR-00-058-RHW
CR-00-105-RHW

**ORDER DISMISSING DEFENDANT'S
28 U.S.C. § 2255 PETITION, IN PART,
AND DIRECTING THE
GOVERNMENT TO RESPOND**

13        Before the Court is Defendant's 28 U.S.C. § 2255 Petition to Vacate, Set Aside,

14   or Correct Sentence by a Person in Federal Custody.  (CR-00-054-RHW [Ct. Rec. 175],

15   (CR-00-058-RHW [Ct. Rec. 166]), (CR-00-105-RHW [Ct. Rec. 170]).

16        On March 22, 2001, a jury found Defendant guilty of two counts of Conspiracy

17   to Receive and Pass Counterfeit; one count of Conspiracy to Import Cocaine; two

18   counts of Importation of Cocaine; and two counts of Possession With Intent to

19   Distribute Cocaine.  Defendant was sentenced to a 20 year term of imprisonment, the

20   sentences for each count to run concurrently; a 10 year term of supervised release;

21   a $700 special penalty assessment; and the payment of restitution in the amount of

22   $57,700.

23                          **DISCUSSION**

24   **I.    Rule 4 Review**

25        Under 28 U.S.C. § 2255, a federal prisoner may move the court to vacate, set

26   aside, or correct his or her sentence on the grounds that (1) the sentence was imposed in

27   violation of the Constitution or laws of the United States; (2) the court was without

28   jurisdiction to impose such sentence; or (3) the sentence was in excess of the maximum

**ORDER DISMISSING DEFENDANT'S 28 U.S.C. § 2255 PETITION, IN PART,
AND DIRECTING THE GOVERNMENT TO RESPOND ~ 1**

authorized by law.  "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States Attorney."  § 2255.  Pursuant to Rule 4(b), Rules Governing Proceedings in the United States District Courts under Section 2255, the Court may, *sua sponte*, dismiss the motion if "it plainly appears from the face of the motion, any attached exhibits, and the record of the prior proceeding that the movant is not entitled to relief."

## II.    Defendant's Claims

Defendant asserts five grounds on which he claims he is being held in violation of the United States Constitution: (1) Ineffective assistance of counsel; (2) Cumulative Error Doctrine, based on ineffective assistance of counsel; (3) Failure of the Government to provide *Brady* and *Jencks Act* material; (4) Ineffective assistance of counsel on appeal; and (5) Violation of his Right to Confrontation.

### A.    Ineffective Assistance of Counsel

Defendant asserts a number of instances where his counsel was ineffective in representing him at trial.

#### 1.    The Law

The Sixth Amendment of the United States Constitution guarantees the right of defendants to effective assistance of counsel.[1]  U.S. Const. Amend. VI; *United States v. Shwayder*, 312 F.3d 1109, 1117 (9th Cir. 2002).  To show a deprivation of the Sixth

---

[1]In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.  U.S. Const. Amend VI.

**ORDER DISMISSING DEFENDANT'S 28 U.S.C. § 2255 PETITION, IN PART, AND DIRECTING THE GOVERNMENT TO RESPOND ~ 2**

Amendment right to counsel, Defendant must establish that his lawyer's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Mancuso v. Olivarez*, 292 F.3d 939, 953-54 (9th Cir. 2002). There is a strong presumption that an attorney's conduct "falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Likewise, an attorney's trial tactics are presumed to be "sound trial strategy." *Id.*

A "deficient" performance is one that is not reasonably effective, where an objective standard guides judgments of reasonableness. *Id.* at 687-88. To satisfy *Strickland's* first prong, the acts or omissions must fall "outside the wide range of professionally competent assistance." *Id.* at 690. Defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.

A deficient performance prejudices a defense if there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Thus, *Strickland's* second prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

### 2. Specific Claims

#### (1) Failure to File Motion to Dismiss Indictments Due to Outrageous Governmental Misconduct

Defendant alleges that his counsel should have filed a Motion to Dismiss the Indictments due to outrageous Government misconduct (entrapment), and for failing to comply with the Colombian Extradition Laws before prosecuting Defendant in the United States. Both of these claims are without merit.

#### a. Entrapment

Defendant asserts that his counsel was ineffective for failing to move to dismiss the indictment based on outrageous Government misconduct (entrapment). A defendant

**ORDER DISMISSING DEFENDANT'S 28 U.S.C. § 2255 PETITION, IN PART, AND DIRECTING THE GOVERNMENT TO RESPOND ~ 3**

1   cannot establish that prejudice results from a lawyer's not exploring a potential defense
2   unless it "likely would have succeeded at trial." *Hill v. Lockhart*, 474 U.S. 52, 59
3   (1985).

4        In order to prevail on a claim of outrageous conduct, a defendant must allege and
5   show that the Government's conduct was "so grossly shocking and so outrageous as to
6   violate the universal sense of justice." *United States v. McClelland*, 72 F.3d 717, 721
7   (9th Cir. 1995). This is "an extremely high standard." *United States v. Smith*, 924 F.2d
8   889, 897 (9th Cir. 1991); *see also United States v. Ryan*, 548 F.2d 782, 789 (9th Cir.
9   1976) (due process defense for outrageous Government conduct is a narrow one).
10  Outrageous Government conduct requires more than negligence or poor judgment.
11  *United States v. Wiley*, 794 F.2d 514, 515 (9th Cir. 1986).

12       Defendant appears to be arguing that the Government's conduct in using Joseph
13  Hutchinson to lure Defendant into the United States was "shocking and outrageous."
14  However, there was no testimony presented at trial that Defendant was bound, gagged,
15  or dragged into the United States. By all accounts, Defendant freely entered the United
16  States. Although he asserts that he told Mr. Hutchinson that he did not want to go into
17  the United States, he checked into a hotel once he arrived in San Diego and stayed a
18  couple of days. If he felt he was being kidnaped, he could have gone to the authorities,
19  or returned to Tijuana, Mexico. Using Mr. Hutchinson to bring Defendant into the
20  United States does not qualify as conduct that would meet the high standard of
21  "outrageous Government conduct" and as such, Defendant has failed to show he is
22  entitled to relief regarding this claim because such a motion would not have been
23  successful.

24       **b.    Violation of Columbian Treaty**

25       Defendant argues that his counsel should have filed a Motion to Dismiss the
26  Indictment based on violations of the Colombian-United States Extradition treaty. As
27  Defendant concedes, he does not have standing to assert a treaty violation. *See United*
28  *States v. Trujillo*, 871 F.Supp. 215, 221 (D. Del. 1994). Moreover, even if Defendant

**ORDER DISMISSING DEFENDANT'S 28 U.S.C. § 2255 PETITION, IN PART,
AND DIRECTING THE GOVERNMENT TO RESPOND ~ 4**

was kidnaped as he claims, the extradition treaty would not apply. *See United States v. Alvarez-Machain*, 504 U.S. 655, 670 (1992) (holding that the forcible kidnaping of a Mexican national was not a 'proceeding under an extradition treaty," and therefore, no violation to the extradition occurred). Defendant has failed to present a colorable claim for relief regarding this claim because such a motion would not have been successful.

### (2)    Failure to Submit his Case to the Grand Jury

Defendant asserts that he told his attorney that he wanted him to file a Motion to Dismiss the Indictment based on the fact that his case was never properly submitted to the Grand Jury. Defendant swears upon his knowledge and belief that the Indictments were forged, and appears to be arguing that racial discrimination may have affected the impaneling of the Grand Jury.

Defendant cannot show that his counsel's performance was unreasonable in failing to file a motion accusing the Government of forging a document without corroborating evidence, other than Defendant's hunch or sworn statements. As such, Defendant fails to present a claim upon which relief can be granted.

### (3)    Failure to File Motion to Dismiss Based on Selective Prosecution

Defendant argues that there were other similarly situated Colombians who were possibly committing crimes and these persons should have been indicted, either instead of him, or along with him. Thus, his counsel's performance was deficient when he failed to file a Motion to Dismiss based on selective prosecution. Defendant's argument misconstrues the theory of selective prosecution.

Generally, the Government retains broad discretion as to whom to prosecute. *Belmontes v. Brown*, 414 F.3d 1094, 1126 (9th Cir. 2005). "So long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978). Because the decision to prosecute is based on such factors as the strength

**ORDER DISMISSING DEFENDANT'S 28 U.S.C. § 2255 PETITION, IN PART, AND DIRECTING THE GOVERNMENT TO RESPOND ~ 5**

of the case, the Government's enforcement priorities, and the case's relationship to those priorities, the Supreme Court has stated that such decisions are "particularly ill-suited to judicial review." *Wayte v. United States*, 470 U.S. 598, 607 (1985). "[I]n the absence of clear evidence to the contrary, courts presume that [prosecutors] have properly discharged their official duties." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (*quoting United States v. Chemical Foundation, Inc*., 272 U.S. 1, 14-15 (1926)). Even so, the decision to prosecute may not be based upon an unjustifiable standard such as race, religion, or other arbitrary classification, including the exercise of protected statutory and constitutional rights. *Armstrong*, 517 U.S. at 464; *Wayte*, 470 U.S. at 608.

Here, there is no evidence that the prosecution was based on an impermissible motive, or impermissible factor, such as race, religion or other arbitrary classification. Most of Defendant's co-Defendants were Caucasian, eliminating any argument that Defendant, as a Colombian, was singled out for prosecution. Defendant cannot rely on his conclusory allegations to support his claim of selective prosecution. Thus, his counsel was not deficient in failing to file a motion that had no evidentiary or legal support.

### (4)    Failure to File a Motion for Mistrial for Failure to Receive Complete Discovery

Defendant argues that his counsel was ineffective for failing to file a Motion for Mistrial because the Government "withheld all types of documents or evidence pertinent to impeaching the Government witnesses and documents that would have assisted Petitioner assemble affirmative defenses." Defendant also asserts that he is entitled to a new trial for *Brady* and *Jencks* Act violations (see Section C).

Defendant has failed to show how the alleged withheld documents or evidence would have affected the results of the proceeding. As such, his claim for ineffective assistance of counsel is without merit.

**ORDER DISMISSING DEFENDANT'S 28 U.S.C. § 2255 PETITION, IN PART, AND DIRECTING THE GOVERNMENT TO RESPOND ~ 6**

### (5) Failure to Object to the Withholding of Certain Documents Under Seal and/or Request In-Chambers Inspection to Determine Whether Documents Were Material to Defense

Defendant argues that his counsel should have filed a Motion for a Mistrial based on the Government improperly withholding information regarding the homicide investigation, or failing to request an in-chambers inspection to determine whether the documents were material to his defense. Specifically, Defendant argues that the information could have been relevant to his defense of selective prosecution and improper motive on the part of the prosecutor. Defendant's theory is that he should have been provided the information regarding the investigation of the Jason Schulwitz murder because all the players who were involved in the homicide had an incentive to push the homicide on Defendant, or see to it that Defendant was convicted so they could get off lightly for the homicide.

Defendant's theory that the redacted information would have been helpful to his defense is based on conjecture and speculation, and would not support a motion to dismiss. There is nothing in the record to suggest that the redacted information was relevant to the drug and counterfeit charges. Thus, the failure to object to the redaction or to request an *in camera* hearing did not fall below the range of professional competence.

### (6) Failure to File Motion to Sever Counterfeit and Drug Indictments

Defendant argues that his counsel should have filed a Motion for Severance of Indictments, pursuant to Fed. R. Crim. P. 14. As a result, Defendant had to present an inconsistent defense for the counterfeit money and drug offenses, and the evidence on the two cases were not cross-admissible.

Under Fed. R. Crim. P. 8(a), separate counts may be joined for trial if they are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan. Pursuant to Fed. R. Crim. P. 14, however, the Court has the authority to order that separate trials be

**ORDER DISMISSING DEFENDANT'S 28 U.S.C. § 2255 PETITION, IN PART, AND DIRECTING THE GOVERNMENT TO RESPOND ~ 7**

conducted on separate counts, if the joinder of the offenses for trial appears to prejudice the Defendant or the Government.  Joinder of offenses may prejudice a defendant in that "(1) he may become embarrassed or confounded in presenting separate defenses; (2) the jury may use the evidence of one of the crimes charged to infer a criminal disposition on the part of the defendant from which is found his guilt of the other crime or crimes charged; or (3) the jury may cumulate the evidence of the various crimes charged and find guilt when, if considered separately, it would not so find." *United States v. Johnson*, 820 F.2d 1065, 1070 (9th Cir. 1987 (*quoting Drew v. United States*, 331 F.2d 85, 88 (D.C. Cir. 1964)).

Contrary to Defendant's assertions, the charges were properly joined for trial. The evidence for both the cocaine and counterfeit charges were intertwined.  Both involved trips to South America and, for the most part, involved players who were linked to Jason Schulwitz.  For example, on his second trip to South America, Nakia Burland returned home with cocaine and counterfeit federal reserve notes.  Jeremy Standow was involved in both smuggling cocaine and counterfeit notes.  The jury was instructed to decide each count separately, and was told that the verdict on one count should not control the verdict on any other count.  *See United States v. Lane*, 474 U.S. 438, 450 n.13 (1986) (concluding that a "carefully crafted limiting instruction" may reduce prejudice "to the minimum" and that "[w]e cannot necessarily assume that the jury misunderstood or disobeyed such instructions.").  Defendant's counsel was not deficient for failing to file a motion to sever because the motion would not have been successful.

### (7)    Failure to Pursue Defendant's Request for Speedy Trial Rights

Defendant argues that the 11 ½ month delay in going to trial hampered his mistaken identity defense, when the witnesses could not "positively identify [Defendant] as the wrong man."

The Sixth Amendment guarantees that, "[i]n all criminal prosecutions, the

**ORDER DISMISSING DEFENDANT'S 28 U.S.C. § 2255 PETITION, IN PART, AND DIRECTING THE GOVERNMENT TO RESPOND ~ 8**

accused shall enjoy the right to a speedy. . . trial."   U.S. Const. Amend. VI.  On its face, the Speedy Trial Clause is written with such breadth that, taken literally, it would forbid the Government to delay the trial of an "accused" for any reason at all.  *Doggett v. United States*, 505 U.S. 647, 651 (1992).  Even so, the Supreme Court has articulated a four-part balancing test to determine whether a defendant's Sixth Amendment speedy trial rights have been violated:  (1) the length of the delay before trial; (2) whether the defendant is to blame for the delay; (3) whether the defendant asserted his speedy trial rights; and (4) whether the defendant was prejudiced by the delay.  *Id.* (*citing Barker v. Wingo*, 407 U.S. 514, 530 (1972).  Depending on the nature of the charges, generally, post-accusation delays approaching one year have been found to be "presumptively prejudicial."  *Id.* at 651 n.1.

In this case, although trial was delayed for almost one year, the Court does not find this delay was "presumptively prejudicial."  This case was complex and multifaceted, with the alleged crimes taking place in both the United States and Columbia.  There was also extensive discovery.  Moreover, much of the delay was attributable to Defendant.  Also, the Court severed Defendant's case from his co-Defendants, who sought a continuance one month before the scheduled trial date.  Because Defendant's speedy trial rights were not violated by the delay in going to trial, his counsel's failure to file a motion to dismiss based on speedy trial rights did not fall below the range of professional competency.

### (8)    Failure to File Motion to Suppress Out of Court Identification Procedures

Defendant argues that his counsel should have investigated the single photograph procedures used by the prosecution to obtain the witness's identification of Defendant, and once it became known that witnesses could not identify Defendant, his attorney should have pursed the misidentification defense.  Defendant argues that the single photograph identification procedure was used with the following witnesses: Angela Standow, Nakia Burland, and Douglas Lee.

**ORDER DISMISSING DEFENDANT'S 28 U.S.C. § 2255 PETITION, IN PART, AND DIRECTING THE GOVERNMENT TO RESPOND ~ 9**

With regard to Angela Standow, the Court excluded the out-of-court single photographic identification of Defendant by Ms. Standow because Ms. Standow could not identify Defendant in court.  With regard to Nakia Burland and Douglas Lee, both witnesses made an in-court identification of Defendant as the person with whom they met in South America.  As a result, Defendant's argument against the use of the single-photograph procedure is limited to arguing that the in-court identification was somehow tainted by the use of the procedure.  The jury was aware that these witnesses were shown a single photograph, and had the opportunity to judge the credibility of the witnesses when making the in-court identification.

Defendant is not entitled to any relief on his claim that his trial was tainted by the use of the single-photograph identification process.

### (9)    Failure to Call Witnesses

Defendant argues that his counsel was ineffective because he failed to call the following persons to testify on his behalf: (1) Hermes Collazos, Defendant's brother; (2) Patricia Collazos-Florez, his wife; (3) Andrew Alain-Collazos, Defendant's son; (4) Elizabeth Berroro, Defendant's niece, and (5) Maricel Court, Defendant's ex-wife.  According to Defendant, these people would have testified that Defendant was not involved in drugs, and did not go by the name of "Penny" or "Tony".

"Few decisions a lawyer makes draw so heavily on professional judgment as whether or not to proffer a witness at trial."  *Lord v. Wood*, 184 F.3d 1083, 1095 (9th Cir. 1999).  Moreover, the proffered testimony of these witnesses regarding whether Defendant was involved in drugs, or whether Defendant did not go by the name of "Penny" or "Tony" was only related to Defendant's interaction with the witnesses, and did not relate to Defendant's interaction with the co-Defendants.  Defendant provided the Court with an affidavit from his brother, Hermes Collazos.  Much of the testimony contained in the affidavit is inadmissible hearsay, and the failure of Defendant's counsel to present admissible testimony would not have affected the outcome of Defendant's trial given the overwhelming evidence that contradicts the testimony of Defendant's

1   brother.  Thus, Defendant has failed to establish that his counsel was deficient for

2   failing to call these witnesses to testify at his trial.

3                  **(10)   Failure to File Motion to Suppress Alleged Confession**

4           Defendant asserts the alleged confession made to Bruce Veal should have been

5   excluded because there was "unnecessary delay" prior to his initial appearance.

6   Defendant also asserts that the confessions should be suppressed because he invoked his

7   *Miranda* rights on two occasions.

8           Defendant's argument is without merit for the simple reason that Bruce Veal was

9   not a Government actor, nor was he a "confidential professional informant."  In

10  *Kuhlmann v. Wilson*, 477 U.S. 436 (1986), the Supreme Court held that a defendant

11  does not establish a Sixth Amendment violation simply by showing that a jail cell

12  informant, either voluntarily or through a prior arrangement, reports incriminating

13  statements to the police.  *Id.* at 459.  Instead, the defendant must show that the police

14  and their informant took some action "designed deliberately to elicit incriminating

15  remarks."  *Id.*  Here, there is nothing in the record to suggest the Government and Mr.

16  Veal took some action "designed deliberately to elicit incriminating remarks."

17  Likewise, there is nothing in the record to suggest the delay caused by transporting

18  Defendant to Oklahoma prior to being arraigned in Spokane was unnecessary.  *See*

19  *United States v. Van Poyck*, 77 F.3d 285, 289 (9th Cir. 1996) (holding that a statement

20  made outside the "safe harbor" six-hour window is admissible if the delay was

21  reasonable or if public policy concerns weigh in favor of admission).

22          As there is no constitutional basis for suppressing Defendant's confession, his

23  claim that his counsel was ineffective for failing to file the motion is without merit.

24                  (11)   **Failure to Obtain Hand Written Exemplar to Prove Fax
                    Was Not Written by Defendant; Failure to Show that Fax Came
25                  From Public Fax Outlet**

26          Defendant asserts that his counsel should have investigated whether a

27  handwriting expert could prove that the handwriting on the fax found in Jason

28  Schulwitz's residence was not Defendant's handwriting.  Defendant wanted his counsel

**ORDER DISMISSING DEFENDANT'S 28 U.S.C. § 2255 PETITION, IN PART,
AND DIRECTING THE GOVERNMENT TO RESPOND ~ 11**

to submit documentary evidence that the fax number on his stationary, which was the same fax number printed on the fax found in Jason Schulwitz's residence, was a number to a public fax outlet. According to Defendant, his counsel's failure to do both rendered his assistance ineffective.

Whether to utilize an handwriting expert is a tactical decision that is left to the discretion of counsel, and the failure to utilize a handwriting expert is sound trial strategy. *See Leavitt v. Arave*, 383 F.3d 809, 840 n.40 (9th Cir. 2004) (recognizing that a defendant's disagreement with his trial counsel's tactical decisions cannot form the basis for an ineffective assistance claim). As such, Defendant's claim that his counsel was ineffective for failing to call an expert witness fails.

Defendant has not provided the Court with the documentary evidence that should have been submitted by his counsel, thus, it is not clear whether such documentary evidence existed. Likewise, at trial, Defendant testified that the number printed on the fax found in Jason Schulwitz's residence was a number to a public fax outlet. Defendant's counsel was not ineffective for failing to introduce purported documentary evidence regarding the same information.

### (12) Failure to Object to the Admission of the Booking Information

Defendant argues that his counsel should have objected to the admission of Agent Thompson's testimony that he obtained a certain phone number from Defendant when he asked Defendant routine booking questions.

Defendant's argument that his counsel's performance was deficient for failing to object to the admission of Agent Thompson's testimony is without merit. A hearing outside the presence of the jury was conducted regarding this issue. Thus, Defendant cannot show that his counsel's performance was deficient for failing to object to the admission of Agent Thompson's testimony because his counsel did, in fact, object.

**ORDER DISMISSING DEFENDANT'S 28 U.S.C. § 2255 PETITION, IN PART, AND DIRECTING THE GOVERNMENT TO RESPOND ~ 12**

(13)  **Failure to File Motion to Dismiss Second Superseding Indictment**

Defendant argues that the Second Superseding Indictments were unconstitutionally amended in violation of his due process rights.  Specifically, Defendant asserts that he was prejudiced when the Second Superseding Indictments were filed two weeks before trial commenced, although Defendant does not take issue with the factual allegations that were being charged in the Indictments.  Instead, he asserts that the Second Superseding Indictments were obtained without a Grand Jury proceeding.

"An indictment regular on its face and returned by a legally constituted and unbiased grand jury is presumed to be valid; the party challenging this presumption faces a heavy burden."  *United States v. Buffington*, 815 F.2d 1292, 1304 (9th Cir. 1987)(*citing Costello v. United States,* 350 U.S. 359, 363 (1956)).

Defendant's claim is baseless because the Second Superseding Indictments were signed by the Grand Jury foreperson and Defendant does not present any evidence to rebut the presumption that the Second Superseding Indictments were valid.

(14)  **Failure to Propose Certain Jury Instructions**

Defendant argues that his counsel's performance was deficient in that he failed to propose instructions on Defendant's proffered defenses.  Specifically, Defendant asserts that the jury should have been instructed on misidentification, missing witness instructions, and alibi and entrapment defenses.

Defendant's arguments are without merit because the evidence, as presented at trial, did not support an instruction on misidentification, missing witness instructions, or alibi and entrapment defenses.

In this case, the persons who identified Defendant at trial were subject to cross-examination.  Any weakness in the identification of Defendant would have been brought out at trial.  The jury could judge for themselves whether the witnesses correctly identified Defendant.  A missing witness instruction is proper only if, from all

**ORDER DISMISSING DEFENDANT'S 28 U.S.C. § 2255 PETITION, IN PART, AND DIRECTING THE GOVERNMENT TO RESPOND ~ 13**

the circumstances, an inference of unfavorable testimony from an absent witness is a natural and reasonable one. *United States v. Carreno*, 363 F.3d 883, 888 (9th Cir. 2004). Here, Defendant has not provided any credible evidence that Jason Schulwitz would have testified unfavorably against the Government. Finally, there is no credible evidence that any witness provided an alibi for Defendant. In his petition, Defendant asserts that he requested his counsel to pursue an alibi and entrapment defense "because he felt the facts of his case warranted such defense." Such conclusory allegations do not support a finding of ineffective assistance of counsel.

### (15) **Failure to File Motion for Mistrial Based on Nakia Burland's Testimony**

Defendant asserts that his counsel should have filed a Motion for Mistrial because he was hampered in his ability to cross-examine Nakia Burland. Specifically, based on the court-imposed limits on testimony surrounding the homicide investigation of Jason Schulwitz, Defendant was unable to cross-examine Mr. Burland regarding his ulterior motives and biases toward Defendant. Defendant asserts that Mr. Burland was testifying falsely against Defendant because Mr. Burland was "a suspect in the homicide investigation of Schulwitz, which may have been the only way to relieve him from the suspect list."

Like Defendant's arguments regarding the redaction of discovery, Defendant's theory as to why information regarding the homicide of Jason Schulwitz would be relevant to his case is based on conjecture and speculation, and cannot be the basis for a claim of ineffective assistance of counsel.

### (16) **Failure to Make Proper Arguments Regarding the Reason for Submitting Defendant's Police Reports**

Defendant argues that his counsel failed to make the proper arguments regarding Exhibit 203, a Colombia Police Report which demonstrated Defendant had reported his passport and other identification were lost. According to Defendant, his counsel should have argued that an imposter assumed Defendant's identity and used his identification to send Jason Schulwitz an $1100 money order.

**ORDER DISMISSING DEFENDANT'S 28 U.S.C. § 2255 PETITION, IN PART, AND DIRECTING THE GOVERNMENT TO RESPOND ~ 14**

Defendant concedes that this alone would not create a prejudicial outcome; rather, the Court should consider counsel's inaction in conjunction with the other errors alleged in his habeas petition. The failure to make closing arguments falls within counsel's trial tactics that are presumed to be sound trial strategy. Thus, Defendant's assertion that his counsel failed to make a particular argument does not rise to the level of ineffective assistance of counsel.

### (17)    Failure to Present Evidence That Showed Defendant did not Enter San Andreas Island

Defendant argues that his counsel's failure to investigate and present evidence from the Columbian Customs that would have proved he did not enter the San Andreas Island during the times the Government asserted he did amounts to ineffective assistance of counsel.

Defendant has not provided the Court with the evidence he asserts is available to show he did not enter the island during the times the Government asserted he did. Given that both Nakia Burland and Angela Standow testified they met Defendant on the San Andreas Island, it seems that even if his counsel investigated this, he would not have been able to prove that Defendant was not on the island. *See also United States v. Holman*, 436 F.2d 863, 869 (9th Cir. 1970) (holding that alleged failure of trial counsel of defendant who was charged with several narcotics offenses to investigate and ascertain defendant's contention that he had never rented an apartment at the address at which certain narcotics transactions had allegedly transpired, that neither the owner nor manager of the apartment recognized a picture of defendant, and that such apartment had been rented to a person other than defendant did not require reversal, in view of overwhelming evidence against defendant).

### (18)    Failure to Object to the Amended Criminal Judgment

Defendant asserts that his counsel's performance was ineffective when he did not secure Defendant's presence at the restitution hearing. Defendant asserts he did not appear in court for any of the restitution hearings.

**ORDER DISMISSING DEFENDANT'S 28 U.S.C. § 2255 PETITION, IN PART, AND DIRECTING THE GOVERNMENT TO RESPOND ~ 15**

"The Constitution, the fundamental principles of jury trial, and the Federal Rules of Criminal Procedure guarantee a defendant the right to be present at every stage of trial."  *United States v. Frazin*, 780 F.2d 1461, 1469 (9th Cir. 1986) (citations omitted). Restitution orders under 18 U.S.C. § 3664 are considered part of the criminal sentence, and thus, a stage of trial.  *United States v. Ramilo*, 986 F.2d 333, 336 (9th Cir. 1993).

Here, Defendant was sentenced on June 14, 2001.  A restitution hearing was held on July 12, 2001.  An amended judgment was entered on July 23, 2001, setting restitution at $617,000.  On November 11, 2001, another amended judgment was entered, setting restitution at $57,700.

It is not clear from the record whether Defendant was present at the restitution hearings.  Thus, the Government is directed to respond to Defendant's argument that his counsel was ineffective for failing to secure his presence at the restitution hearing, although the Court notes that the remedy for such a violation would not be a new trial on the issue of Defendant's guilt.

## B.    Cumulative Effect

Defendant asserts that even if the Court concludes that one specific instance where it is alleged that Defendant failed to receive effective assistance of counsel is not enough to grant his habeas petition, the Court should apply the cumulative error doctrine and determine that he was denied a Constitutional right to a fair trial and vacate the guilty verdict.

The cumulative error doctrine in habeas proceedings recognizes that, "even if no single error were prejudicial, where there are several substantial errors, 'their cumulative effect may nevertheless be so prejudicial as to require reversal.'" *Killian v. Poole*, 282 F.3d 1204, 1211 (9th Cir. 2002) (*quoting United States v. de Cruz*, 82 F.3d 856, 868 (9th Cir. 1996)).  In the absence of a specific Constitutional violation, habeas review of trial error is limited to whether the error "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

**ORDER DISMISSING DEFENDANT'S 28 U.S.C. § 2255 PETITION, IN PART, AND DIRECTING THE GOVERNMENT TO RESPOND ~ 16**

In reviewing the record, the Court cannot conclude that the trial was so infected with unfairness as to make the resulting conviction a denial of due process. Instead, the record reflects that Defendant received effective assistance of counsel. Defendant's claim that the cumulative effect of the instances of ineffective assistance of counsel warrants a new trial is without merit.

### C. Failure of the Government to Provide *Brady* and *Jencks* Acts Material

Defendant argues that his due process rights were violated because the Government impermissibly withheld exculpatory or favorable evidence, in violation of *Brady v. Maryland* and the *Jencks* Act.

The rule promulgated in *Brady v. Maryland*, 373 U.S. 83 (1963), provides that exculpatory material in the Government's possession must be released to criminal defendants. *Id.* at 87. *Brady* information includes "material. . . that bears on the credibility of a significant witness in the case." *United States v. Strifler*, 851 F.2d 1197, 1201 (9th Cir. 1988). Under *Brady*, the prosecutor's withholding of evidence favorable to the accused violates due process where the evidence is material either to guilt or innocence. *United States v. Gordon*, 844 F.2d 1397, 1403 (9th Cir. 1988). Evidence impeaching the testimony of a Government witness falls within the *Brady* rule when the reliability of the witness may be determinative of a criminal defendant's guilt or innocence. *Giglio v. United States*, 405 U.S. 150, 154 (1972). Even so, the *Brady* rule does not require a prosecutor to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive him of a fair trial. *United States v. Bagley*, 473 U.S. 667, 675 (1985).

The Court employs a three-part test to measure whether a failure to disclose amounted to a *Brady* violation: (1) the evidence at issue must be "favorable" to the accused, either because it is exculpatory, or because it is impeaching; (2) the evidence must have been suppressed by the state, either willfully or inadvertently; and (3) the suppressed evidence must be "material" to the accused's guilt or punishment--*i.e.*, prejudice must have ensued. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *United*

**ORDER DISMISSING DEFENDANT'S 28 U.S.C. § 2255 PETITION, IN PART, AND DIRECTING THE GOVERNMENT TO RESPOND ~ 17**

*States v. Cooper*, 173 F.3d 1192, 1202 (9th Cir. 1999). Evidence is material if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley*, 473 U.S. at 682.

The *Jencks* Act entitles a defendant to access Government documents for assistance in the cross-examination of witnesses in order to impeach prior inconsistent statements. 18 U.S.C. § 3500. The *Jencks* Act states, in part: "In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case." 18 U.S.C. § 3500(a). After the witness testifies on direct examination, the defendant is entitled to such statements or reports as are relevant to the testimony. *Id*. § 3500(b).

Defendant sets forth specific instances in which he claims the Government violated his Due Process rights when it failed to disclose the following materials: (1) written summaries of withheld material under seal; (2) additional DEA-6 reports of the debriefing of Nakia Burland; (3) material regarding Bruce Veal's criminal history, prison disciplinary reports, and the names of cases where Mr. Veal previously assisted the Government; (4) Agent Thompson's materials; (5) material regarding the homicide investigation; (6) Sprint phone card records; and (7) Tulia Arana's money order.

In all of these alleged violations, Defendant has failed to show that he suffered prejudice—that is, that there is a reasonable probability that the outcome of the trial would have been different had the evidence been disclosed. Also, with regard to the Sprint phone card records and Tulia Arana's money order, it does not appear that the Government was under any obligation to provide this information.

### D.    Ineffective Assistance of Counsel

Defendant asserts that Mr. Ryan violated his Due Process right to effective assistance of counsel on appeal in violation of the Fourteenth Amendment of the United States Constitution. Under the Due Process Clause of the Fifth Amendment, an

1  appellant has the right to representation by effective counsel in his or her direct appeal.

2  *See Pollard v. White*, 119 F.3d 1430, 1435 (9th Cir. 1997) ("The Due Process Clause

3  guarantees a criminal defendant effective assistance of counsel on his first appeal as of

4  right."); *Doyle v. United States*, 366 F.2d 394, 398-99 (9th Cir. 1966) (holding that the

5  Fifth Amendment guarantees a criminal defendant prosecuted in federal court the right

6  to counsel on appeal). The *Strickland* analysis applies to determine whether Defendant

7  was denied his Due Process Right to effective assistance of counsel on direct appeal.

8  *Pollard*, 119 F.3d at 1435.

9       In making these claims, Defendant merely asserts these claims should have been

10 made, but does not discuss how the failure to assert these claims fell below the objective

11 standard of reasonable representation, nor did he make any showing that the results of

12 the appeal would have been different if these claims would have been made.

13 As such, Defendant's claims that his counsel's performance on appeal was ineffective

14 fails.

15       **E.    Defendant's Confrontation Rights Were Violated**

16       In his amended memorandum, Defendant argues that a number of Government

17 witnesses testified to statements they heard from unavailable witnesses in violation of

18 *Crawford v. Washington*, 541 U.S. 36, 68 (2004). The unavailable witnesses were

19 Jason Schulwitz, Erin Derrick, Joe Hutchinson, and Jeremy Standow. Defendant argues

20 that because there was no prior proceedings to allow Defendant the adequate

21 opportunity to cross-examine the admitted testimony, his confrontation rights were

22 violated and he has a right to a new trial.

23       *Crawford* does not apply in this instance because the Government witnesses did

24 not testify to statements that were made in affidavits, depositions, prior testimony, or

25 confessions. *See id.* ("[w]hatever else the term covers, it applies at a minimum to prior

26 testimony at a preliminary hearing, before a grand jury, or at a former trial; and to

27 police interrogations."); *see also White v. Illinois*, 502 U.S. 346, 365 (1992) (Thomas,

28 J., concurring in part) ("[T]he Confrontation Clause is implicated by extrajudicial

**ORDER DISMISSING DEFENDANT'S 28 U.S.C. § 2255 PETITION, IN PART, AND DIRECTING THE GOVERNMENT TO RESPOND ~ 19**

statements only insofar as they are contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions.").  Thus, Defendant is not entitled to relief on his claim that his Confrontation Rights were violated at trial.

Accordingly, **IT IS HEREBY ORDERED:**

1.    Defendant's 28 U.S.C. §2255 petition is **DISMISSED**, in part.

2.    Within 30 days from the date of the filing of this order, the Government is directed to respond to Defendant's argument that his counsel was ineffective for failing to secure his presence at the restitution hearing.

3.    Defendant's Motion for Leave to File A Memorandum of Points and Authorities (Ct. Rec. 176) is **GRANTED**.

4.    Defendant's Motion for Leave to File Motions when Petitioner Deems it Most Appropriate (Ct. Rec. 179) is **DENIED**, as moot.

5.    Defendant's Motion for Discovery (Ct. Rec. 180) is **DENIED**, as moot.

6.    Defendant's Motion for Leave to File Supplemental Pleading (Ct. Rec. 181) is **GRANTED**, as moot.

7.    Defendant's Motion for Leave to File Motions when Petitioner Deems it Most Appropriate (Ct. Rec. 183) is **DENIED**, as moot.

8.    Defendant's Motion for Discovery (Ct. Rec. 185) is **DENIED**, as moot.

9.    Defendant's Motion for Leave to File Supplemental Pleadings (Ct. Rec. 187) is **DENIED**, as moot.

10.   Defendant's Motion for Leave to File Supplemental Pleading (Ct. Rec. 190) is **DENIED**, as moot.

11.   Defendant's Motion for Leave to File a Corrected Version of Defendant's Memorandum of Points and Authorities (Ct. Rec. 196) is **GRANTED**.

///

///

///

**IT IS SO ORDERED.**  The District Court Executive is hereby directed to enter

**ORDER DISMISSING DEFENDANT'S 28 U.S.C. § 2255 PETITION, IN PART, AND DIRECTING THE GOVERNMENT TO RESPOND ~ 20**

1   this order and to furnish copies to Defendant and counsel.

2       **DATED** this 17th day of January, 2006.

3

4                           s/ Robert H. Whaley

5                       ROBERT H. WHALEY
                   Chief United States District Judge

6

7

8

9   Q:\CRIMINAL\2000\Collazos-Munoz\habeas.ord.wpd

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ORDER DISMISSING DEFENDANT'S 28 U.S.C. § 2255 PETITION, IN PART,
AND DIRECTING THE GOVERNMENT TO RESPOND ~ 21**